1  Robert J. Nelson (State Bar No. 132797)
   Scott P. Nealey (State Bar No. 193062)
2  Cecilia Han (State Bar No. 235640)
   LIEFF, CABRASER, HEIMANN &
3  BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
5  Facsimile: (415) 956-1008

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11

12  KAREN ANN PAVONI,                 Case No. CV11 10513 - RSWC
    individually; PAMELA JOYCE                    (SPx)
13  MOYET, individually; FRED
    ARTHUR SCHEID, individually;     **COMPLAINT**
14  BOBBY LYNN COATS,
    individually,                    Strict Products Liability: Design Defect
15                                    Strict Products Liability: Failure to Warn
              Plaintiffs,             Negligent Design
16                                    Negligent Failure to Warn
    v.                                Negligence
17                                    Breach of Implied Warranties –
    CHRYSLER GROUP LLC and            Merchantability and Fitness For a
18  DOES 1 through 100, inclusive,    Particular Purpose
                                      Wrongful Death
19            Defendants.

20                                    **DEMAND FOR JURY**

21

22

23

24

25

26

27

28

934424.6                                           COMPLAINT

1    Plaintiffs KAREN ANN PAVONI, individually; PAMELA JOYCE

2  MOYET, individually; FRED ARTHUR SCHEID, individually; BOBBY LYNN

3  COATS, individually (collectively "Plaintiffs" unless otherwise individually

4  identified), by and through their counsel, allege as follows:

5  **I.    INTRODUCTION**

6         1.    These causes of action arise from a tragic incident occurring on

7  February 27, 2011 that violently claimed the lives of Rose Marie Coats and Roy Joe

8  Coats.

9         2.    Rose Marie Coats and Roy Joe Coats ("Decedents" unless otherwise

10  individually identified) were the owners of one 2008 Dodge Grand Caravan VIN #

11  2D8HN44H48R669662 ("subject vehicle").

12         3.    On information and belief, on the morning of February 27, 2011, Rose

13  Marie Coats, age 75, entered the subject vehicle to leave to attend a church service,

14  a service she attended regularly. On information and belief, Mrs. Coats started the

15  engine and placed the subject vehicle in what she reasonably believed was "park,"

16  based on the subject vehicle's cue's and lack of movement when she released her

17  foot of the service brake. On information and belief, upon reasonably believing that

18  the subject vehicle was in "park," Mrs. Coats exited the subject vehicle. On

19  information and belief, Mr. Coats was in the garage at the time Mrs. Coats exited

20  the subject vehicle. On information and belief, Mr. Coats then walked right next to

21  or in close proximity to Mrs. Coats upon her exiting the subject vehicle. On

22  information and belief, the subject vehicle idled momentarily and then suddenly,

23  without warning, began moving rearward in reverse.

24         4.    On information and belief, Mr. Coats could not avoid the path of the

25  open driver's side door and was violently struck to the ground. On information and

26  belief, while on the ground, the subject vehicle ran over Mr. Coats, fracturing ribs

27  on both sides of his body and inflicting bruising and damage to his right ankle as

28

1    well. With no prospect of immediate medical attention, Mr. Coats died on the floor
2    of his garage.

3         5.    On information and belief, the subject vehicle moved towards Mrs.
4    Coats, who could not avoid the path of the open driver's side door. Mrs. Coats was
5    pinned between the garage door frame and the open driver's side door. The driver's
6    side door was bent backward as a result of the force of the impact. Trapped between
7    the garage door frame and the open driver's side door, Mrs. Coats suffocated to
8    death, with her husband near her feet.

9         6.    Plaintiffs allege the following based upon their own knowledge,
10   publicly available information, and information and belief:

11   **II.    JURISDICTION AND VENUE**

12         7.    This Court has jurisdiction over the subject matter of this action
13   pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than
14   $75,000, exclusive of interest and costs, and because there is complete diversity of
15   citizenship among the parties.

16         8.    This Court has personal jurisdiction over the Defendants because a
17   substantial portion of the wrongdoing alleged in this Complaint took place in
18   California, the Defendants are authorized to do business in California, the
19   Defendants have minimum contacts with California, and/or the Defendants
20   otherwise intentionally avail themselves of the markets in California through the
21   promotion, marketing and sale of their products in California, each of which are
22   sufficient bases to render the exercise of jurisdiction by this Court permissible
23   under traditional notions of fair play and substantial justice.

24         9.    Venue is proper in the Central District of California pursuant to 28
25   U.S.C. § 1391(a) and (b) because a substantial part of the events, acts and
26   omissions giving rise to these claims occurred in the Central District of California,
27   where many of the defendants have conducted substantial business.

28

## III. PARTIES

### A. Plaintiffs

10.  Prior to her death, Rose Marie Coats was a resident of California.

11.  Prior to his death, Roy Joe Coats was a resident of California.

12.  Prior to her death, Rose Marie Coats was an active person who was in good health. Mrs. Coats attended church regularly and enjoyed gardening and crocheting. Mrs. Coats and Plaintiffs shared an extremely close relationship.

13.  Prior to his death, Roy Joe Coats was an active person. A retired contractor, Mr. Coats was skilled at wood work, often building items for his family members. Mr. Coats enjoyed camping and hosting family get-togethers.

14.  Mr. and Mrs. Coats were married for 6.5 years. Together they enjoyed RV'ing across the country.

15.  Plaintiff KAREN ANN PAVONI is the natural daughter of Rose Marie Coats, deceased, and is an heir to the Estate of Rose Marie Coats.

16.  Plaintiff PAMELA JOYCE MOYET is the natural daughter of Rose Marie Coats, deceased, and is an heir to the Estate of Rose Marie Coats.

17.  Plaintiff FRED ARTHUR SCHEID is the natural son of Rose Marie Coats, deceased, and is an heir to the Estate of Rose Marie Coats.

18.  Plaintiff, BOBBY LYNN COATS, is the natural son of Roy Joe Coats, deceased, and is an heir to the Estate of Roy Joe Coats.

### B. Defendants

19.  Defendant Chrysler Group LLP ("CHRYSLER") is a Delaware corporation with its principle place of business in Auburn Hills, Michigan, and is authorized to do business in the State of California.

20.  Chrysler LLC, now known as Old Carco LLC, was the manufacturer of the subject vehicle. At all relevant times herein, Chrysler LLC manufactured automobiles, sport utility vehicles, subject vehicles, and vans that are sold throughout the United States and in foreign countries.

21.     Pursuant to 11 U.S.C. § 363(f), Chrysler LLC or Old Carco LLC sold substantially all of its assets in a bankruptcy proceeding before the U.S. Bankruptcy Court for the Southern District of New York.

22.     On August 27, 2009, Defendant CHRYSLER agreed to accept product liability claims on vehicles such as the subject vehicle  manufactured by Chrysler LLC or Old CarCo LLC "before June 10 that are involved in accidents on or after that date." See August 27, 2009 Letter from John T. Bozzella of Chrysler Group LLP to Honorable Richard Durbin.

23.     Plaintiffs are presently unaware of the true names and capacities of Defendants sued herein as DOES 1-100, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believes and thereon allege that each of the fictitiously named Defendants is an agent, employee or affiliate of Defendants and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

## IV.     FACTUAL ALLEGATIONS REGARDING THE PARK-TO-REVERSE DEFECT

24.     A "park-to-reverse" defect can exist in a vehicle equipped with an automatic transmission when there is inadequate mechanical force (called "detenting force") provided by the automatic transmission system to ensure that the vehicle's transmission always defaults into an intended gear position (such as park or reverse) when an operator does not fully shift into that intended gear position.

25.     In a vehicle with a park-to-reverse defect an operator of the vehicle in normal use can inadvertently place the shift selector between the intended park and reverse gear positions.  The shift selector will remain for a period of time between the intended gear position and from this position the vehicle then may (or may not) have a delayed engagement of powered reverse, or may roll as it would in neutral.

26. Because of the possible delay in the engagement of reverse gear when an operator places the vehicle into what, from the vehicle's "cues," the operator would reasonably believe to be park, the park-to-reverse defect is unreasonably dangerous because an operator may have exited the vehicle, or be exiting the vehicle, when the vehicle suddenly and unexpectedly moves backwards in powered reverse.

27. As a result of injuries and deaths resulting from park-to-reverse accidents (sometimes referred to as "inadvertent rearward movement") from at least the 1950's and 1960's the Automobile Industry has been aware of the defect, and the need to design vehicles so as to prevent the vehicle's shift selector being placed in a position between the intended gear positions from which the vehicle can then have a delayed engagement of reverse.

28. Defendant CHRYSLER in specific was well aware of the need to design its automatic transmission system so that an operator could not leave the vehicle between park and reverse from which there could be a delayed engagement of reverse. Notice to Defendant CHRYSLER, well prior to the Plaintiffs' and decedents' injuries, of the need to avoid a park-to-reverse defect included:

a. numerous park-to-reverse incidents on various vehicles made by Defendant CHRYSLER in the 1960's, 1970's, and 1980's which CHRYSLER received notice of through customer complaints;

b. numerous reports of injuries and deaths and an investigation by the National Highway Traffic Safety Administration ("NHTSA") (EA 91-010) of Defendant CHRYSLER's K car vehicles in 1990-91. By the closing of EA 91-010 in 1991, Defendant CHRYSLER had received notice of 318 field reports of the defect and had been sued 23 times while receiving notice of 217 accidents involving property damage, 111 accidents involving injuries, and reports of 7 fatalities;

1    c.    numerous reports of park-to-reverse accidents and injuries in

2    Dodge Dakota pickups beginning in model year 1987. These reports continued

3    through the opening of an NHTSA investigation of the park-to-reverse problem in

4    the Dakotas (EA 96-06) which was only closed when in 2000 Defendant

5    CHRYSLER executed a voluntary recall of certain Dodge Dakotas in an effort to

6    attempt to prevent further NHTSA action. By the time EA 96-06 was closed in

7    2000, Defendant CHRYSLER had received reports of 152 incidents, 95 crashes, 20

8    injuries, and 5 fatalities in 1991 and 1992 Dodge Dakotas, as well as numerous

9    accidents and injuries in other model year Dodge Dakotas;

10    d.    in 2001, NHTSA opened another investigation, this time of the

11    Grand Cherokee for park-to-reverse problems (EA 01-017). By the time that

12    CHRYSLER instituted another voluntary recall in order to prevent further NHTSA

13    action, CHRYSLER had received 1,038 complaints involving 428 crashes, 192

14    injuries, and 4 fatalities on certain model Grand Cherokees. In addition,

15    CHRYSLER received reports of park-to-reverse accidents and injuries in additional

16    model years of the Grand Cherokee before and after this recall;

17    e.    in 2004, again prior to Plaintiffs' and Decedents' injuries,

18    NHTSA opened a further investigation of Defendant CHRYSLER's 2003-2005

19    Dodge Ram 2500/3500 pick up trucks (EA 04-025). In October 2005, CHRYSLER

20    reported knowledge of 223 park-to-reverse accidents, which included 21 personal

21    injury claims, 202 crash claims, and 2 fatalities on certain Dodge Ram pick-up

22    trucks. In response to this NHTSA investigation, in March 2006, Defendant

23    CHRYSLER voluntarily recalled the vehicles and installed an "out-of-park alarm"

24    which sounded the vehicle's theft deterrent system (flashing the vehicle's lights and

25    sounding the vehicle's car alarm) if the vehicle operator placed the vehicle into

26    "false park" and then attempted to open the driver's side door with the vehicle

27    running.

28

29. Despite the many thousands of park-to-reverse accidents and injuries, and despite the numerous deaths in park-to-reverse accidents, Defendant CHRYSLER has adopted a consistent policy of refusing to admit the existence of a defect in the vehicle, and instead blaming any resulting accidents, injuries, and deaths on "operator error." CHRYSLER contends that in each of these cases that the vehicles are being mistakenly left in reverse gear by operators.

30. The standard of care in the automobile industry is to fully investigate complaints or reports received by an automobile manufacturer which appear to pose a potential or actual safety risk.

31. The investigative process by which complaints or incident reports are investigated is a technique called "root cause analysis" in which the vehicle manufacturer's engineering staff or outside consultants will (a) determine if the issue is safety-related; (b) carefully analyze the complaint to fully understand it; (c) attempt to reproduce the complaint on the subject vehicle or an exemplar; (d) determine if the problem is a manifestation of a unique vehicle feature (e.g., a vehicle manufacturing defect); (e) if the problem is not so identified identify the engineering feature of the product which allows for the mechanical system to perform in the manner complained of; and (f) determine if there is an engineering solution through redesigning the product which will prevent it as a mechanical system from manifesting the complaint in the system or if an adequate redress is not feasible, then warn adequately to prevent injury.

32. Despite the engineering standard being to conduct all necessary root cause analysis, and the fact that CHRYSLER conducted numerous root cause analyses on other potential and actual defects, CHRYSLER avoided conducting any adequate root cause analysis on the park-to-reverse defects on any of its vehicles so as to avoid identifying a defect which would require Defendant CHRYSLER to undertake expensive measures to fix defective and dangerous vehicles which had been, and were being, sold to its customers and the public such as Decedents.

33. Defendant CHRYSLER's refusal over a period of over 20 years to conduct appropriate and necessary "root cause analysis" was done with the understanding that its failure to conduct root cause analysis and identify and fix the park-to-reverse defect on its vehicles would result in injuries and deaths, including the injuries suffered by Plaintiffs and Decedents.

34. It is appropriate engineering practice in the automobile industry to conduct a Design Failure Mode and Effects Analysis (DFMEA) any time a manufacturer or a supplier of the product creates a new design, makes a design change to an existing design, or has a different application of an existing component or subsystem.

35. In a DFMEA, engineers engage in a process by which they attempt to identify potential issues that may be presented by the design, redesign, or pairing of components. In a DFMEA all prior complaints, campaigns, warranty data or other documentation available on a specific component or system company-wide is reviewed and analyzed to identify potential failure modes of a product, develop a test protocol to test for each of the potential failure modes, and through completing such tests to rule out (or identify) the ability of a design, redesign or pairing of components to fail as have earlier designs.

36. Had a DFMEA been conducted on the transmission systems on Defendant CHRYSLER's other vehicles, or the subject vehicle, it would have easily identified the park-to-reverse defect in the subject vehicle.

37. Yet despite the fact that DFMEA is a standard procedure conducted by Defendant CHRYSLER, CHRYSLER at no time conducted any DFMEA on the transmission system of the subject vehicle, or of other of its vehicles.

## FIRST CAUSE OF ACTION
### (Strict Products Liability – Design Defect)
### (Against All Defendants)

38. Plaintiffs incorporate by reference all preceding paragraphs and allegations as if fully set forth herein.

1    39.    Defendant CHRYSLER designed, engineered, manufactured, tested,

2    assembled, marketed, advertised, sold and/or distributed the subject vehicle.

3    40.    Defendants CHRYSLER and the Doe Defendants are strictly liable to

4    Plaintiffs because the subject vehicle was defective and unreasonably dangerous for

5    normal use due to its defective design, production, assembly, marketing,

6    advertising, testing, sale, maintenance and service.

7    41.    Defendants CHRYSLER and the Doe Defendants designed,

8    engineered, tested, assembled, marketed, advertised, inspected, maintained, sold,

9    distributed, and placed on the market and in the stream of commerce a defective

10   product, the subject vehicle, unreasonably dangerous to the consumer, knowing that

11   the product would reach and did reach the ultimate consumer without substantial

12   change in the defective condition it was in from the date when it left each

13   Defendant's control.

14   42.    Defendants CHRYSLER and the Doe Defendants knew or should

15   have known that the ultimate users or consumers of this product would not, and

16   could not, inspect the subject vehicle so as to discover the latent defects described

17   above. The subject vehicle was defective when it left the control of each of these

18   Defendants.

19   43.    Defendants CHRYSLER and the Doe Defendants knew or should have

20   known of the substantial dangers involved in the reasonably foreseeable use of the

21   subject vehicle, whose defective design caused it to have an unreasonably

22   dangerous propensity in normal use to have a delayed engagement of a powered

23   reverse, from what a reasonable person reasonably believes, and from what the

24   vehicle's "cues" indicate, is "park," and thus has a high propensity to cause injury

25   and/or death to the driver and others.

26   44.    Defendants CHRYSLER and the Doe Defendants knew or should have

27   known of the substantial dangers posed by the subject vehicle.

28

1    45.    The subject vehicle was, at the time of the incident, being used in the

2    manner intended by Defendants CHRYSLER and the Doe Defendants, and in a

3    manner that was reasonably foreseeable by Defendants as involving a substantial

4    danger not readily apparent.

5    46.    Decedents were foreseeable users of the subject vehicle.

6    47.    Decedents' and Plaintiffs' damages and injuries were the legal and

7    proximate result of defects in the subject vehicle.

8    48.    Plaintiffs are, therefore, entitled to damages in an amount to be proven

9    at the time of trial.

10    WHEREFORE, Plaintiffs pray judgment against Defendants, and each of

11    them, as hereinafter set forth.

12    ## SECOND CAUSE OF ACTION
### (Strict Products Liability: Failure to Warn)
13    ### (Against All Defendants)

14    49.    Plaintiffs incorporate by reference all preceding paragraphs and

15    allegations as if fully set forth herein.

16    50.    Defendant CHRYSLER and the Doe Defendants knew and had reason

17    to know, but failed to warn Decedents and Plaintiffs that the subject vehicle was

18    defective and unreasonably dangerous for normal use due to the hidden park-to-

19    reverse defect because of the hundreds of prior complaints on the subject vehicle

20    and the thousands of complaints on vehicles with identical and/or substantially

21    similar transmissions.

22    51.    Defendant CHRYSLER and the Doe Defendants knew and had reason

23    to know, but failed to warn Decedents and Plaintiffs of the substantial dangers

24    involved in the reasonably foreseeable use of the SUBJECT VEHICLE, whose

25    defective design caused it to have an unreasonably dangerous propensity in normal

26    use to have a delayed engagement of a powered reverse, from what a reasonable

27    person reasonably believes, and from what the vehicle's "cues" indicate, is "park",

28    and thus has a high propensity to cause injury and/or death to the driver and others.

52.    Defendant CHRYSLER and the Doe Defendants designed, engineered, manufactured, tested, assembled, marketed, advertised, inspected, maintained, sold, distributed, and placed on the market and in the stream of commerce a defective product, the subject vehicle, unreasonably dangerous to the consumer, knowing that the product would reach and did reach the ultimate consumer without substantial change in the defective condition it was in from the date when it left each Defendant's control.

53.    Defendant CHRYSLER and the Doe Defendants knew or should have known that the ultimate users or consumers of this product would not, and could not, inspect the subject vehicle so as to discover the latent park-to-reverse defect described above.  The subject vehicle was defective when it left the control of each of these Defendants.

54.    The subject vehicle was, at the time of Plaintiffs' and Decedents' injuries, being used in the manner intended by Defendant CHRYSLER and Doe Defendants, and in a manner that was reasonably foreseeable by Defendants as involving a substantial danger not readily apparent.

55.    Decedents were foreseeable users of the subject vehicle.

56.    Decedents' and Plaintiffs' damages and injuries were the legal and proximate result of Defendants' failure to warn of the defects and dangers inherent in the subject vehicle.

57.    Plaintiffs are, therefore, entitled to damages in an amount to be proven at the time of trial.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION
### (Negligent Design)
### (Against CHRYSLER and the Doe Defendants)

58.    Plaintiffs incorporate by reference all preceding paragraphs and allegations as if fully set forth herein.

59. Defendant CHRYSLER and Doe Defendants and each of them, owed a duty to Decedents and Plaintiffs to use reasonable care in the design, engineering, manufacturing, testing, assembly, marketing, advertisement, inspection, maintenance, sale, warning and distribution of the subject vehicle, to be used by the public and ultimate users, like Decedents, for the purpose for which it was intended.

60. Defendant CHRYSLER and Doe Defendants breached said duty and are guilty of one or more of the following negligent acts and/or omissions:

a. Failing to use due care in the design, engineering, testing, assembly, marketing, advertising, inspection, maintenance, sale and/or distribution of the and/or to utilize and/or implement reasonably safe designs in the manufacture of the subject vehicle;

b. Failing to design, manufacture and incorporate or to retrofit the subject vehicle with reasonable safeguards and protections against park-to-reverse incidents (or the vehicle alternatively being left in reverse and exited) and the consequences thereof when used in the manner for which it was intended;

c. Failing to adequately prevent, identify, mitigate, and fix defective designs and hazards associated with park-to-reverse incidents in accordance with good engineering practices;

d. Failing to make timely and adequate corrections to the manufacture and design of the subject vehicle so as to prevent and/or minimize the problem of park-to-reverse incidents;

e. Otherwise being careless and negligent.

61. The aforementioned negligent acts and omissions of Defendants were the direct and proximate cause of Plaintiffs' and Decedents' damages.

62. Plaintiffs are, therefore, entitled to damages in an amount to be proven at the time of trial.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### (Negligent Failure to Warn)
### (Against CHRYSLER and Doe Defendants)

63. Plaintiffs incorporate by reference all preceding paragraphs and allegations as if fully set forth herein.

64. Defendant CHRYSLER and Doe Defendants and each of them, owed a duty to Decedents and Plaintiffs to use reasonable care in the design, engineering, manufacturing, testing, assembly, marketing, advertisement, inspection, maintenance, sale, warning and distribution of the subject vehicle to be used by the public and ultimate users, like Decedents, for the purpose for which it was intended.

65. Defendant CHRYSLER and Doe Defendants breached said duty and are guilty of one or more of the following negligent acts and/or omissions:

a. Failing to provide adequate and proper warnings to the public and to Plaintiffs and Decedents of the propensity of the subject vehicle to be involved in park-to-reverse incidents (or alternatively, the driver to inadvertently exit in reverse) when used in the manner for which it was intended;

b. Failing to notify and warn the public including Plaintiffs and Decedents of reported park-to-reverse incidents and thus misrepresenting the safety of the subject vehicle generally;

c. Otherwise being careless and negligent.

66. The aforementioned negligent acts and omissions of Defendants were the direct and proximate cause of Decedents' and Plaintiffs' damages.

67. Plaintiffs are, therefore, entitled to damages in an amount to be proven at the time of trial.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as hereinafter set forth.

# FIFTH CAUSE OF ACTION
## (Negligence)
## (Against All Defendants)

68.     Plaintiffs incorporate by reference all preceding paragraphs and allegations as if fully set forth herein.

69.     Defendants, and each of them, owed a duty to Decedents and Plaintiffs to use reasonable care in the design, engineering, testing, assembly, marketing, advertisement, inspection, maintenance, sale, warning and distribution of the subject vehicle, as well as any "fix" for the park-to-reverse defect to be used by the public and ultimate users, like Decedents, for the purpose for which they were intended.

70.     Defendants breached said duty and are guilty of one or more of the following negligent acts and/or omissions:

a.     Failing to use due care in the design, engineering, testing, assembly, marketing, advertising, inspection, maintenance, sale and/or distribution of the subject vehicle and/or to utilize and/or implement reasonably safe designs in the manufacture of the subject vehicle;

b.     Failing to provide adequate and proper warnings to the public and to Decedents and Plaintiffs of the subject vehicle's propensity to be involved in park-to-reverse incidents when used in the manner for which it was intended;

c.     Failing to design, incorporate, or retrofit the subject vehicle with reasonable safeguards and protections against park-to-reverse incidents and the consequences thereof when used in the manner for which it was intended;

d.     Failing to adequately prevent, identify, mitigate, and fix defective designs and hazards associated with park-to-reverse incidents in accordance with good engineering practices;

e.     Failing to notify and warn the public including Decedents and Plaintiffs of reported park-to-reverse incidents and thus misrepresenting the safety of the subject vehicle and the model subject vehicle generally;

1     f.     Failing to make timely and adequate corrections to the

2     manufacture and design of the subject vehicle so as to prevent and/or minimize the

3     problem of park-to-reverse incidents;

4     g.     Failing to use due care in the testing, inspection, maintenance

5     and servicing of the subject vehicle at all times prior to the incident; and

6     h.     Otherwise being careless and negligent.

7     71.     The aforementioned negligent acts and omissions of Defendants were

8     the direct and proximate cause of Decedents' and Plaintiffs' damages.

9     72.     Plaintiffs are, therefore, entitled to damages in an amount to be proven

10    at the time of trial.

11    WHEREFORE, Plaintiffs pray judgment against Defendants, and each of

12    them, as hereinafter set forth.

13                          **SIXTH CAUSE OF ACTION**
                  **(Breach Of Implied Warranties – Merchantability And Fitness**
14                          **For A Particular Purpose)**
                          **(Against All Defendants)**
15

16    73.     Plaintiffs incorporate by reference all preceding paragraphs and

17    allegations as if fully set forth herein.

18    74.     Prior to the time that the subject vehicle was being used by Decedents

19    during the incident, the Defendants, and each of them, impliedly warranted to

20    members of the general public, including Decedents that CHRYSLER-

21    manufactured vehicles including the  subject vehicle were of merchantable quality

22    and safe for the use for which it was intended by the Defendants.

23    75.     Decedents relied on the skill and judgment of Defendants, and each of

24    them, in the selection, purchase and use of the subject vehicle.

25    76.     The subject vehicle was not safe for its intended use nor was it of

26    merchantable quality as warranted by Defendants, and each of them, in that it was

27    defectively designed, thereby dangerously exposing the user of said CHRYSLER-

28    manufactured vehicles including the subject vehicle to serious injuries.

1       77.   As a legal and proximate result of the breach of said implied warranty,

2   Plaintiffs and Decedents sustained the injuries and damages herein set forth.

3       78.   Plaintiffs are, therefore, entitled to damages in an amount to be proven

4   at the time of trial, including, but not limited to, the purchase price of the subject

5   vehicle and all interest accrued on the principle balance.

6   **SEVENTH CAUSE OF ACTION**<br/>**WRONGFUL DEATH — ALL DEFENDANTS**

7

8       79.   Plaintiffs incorporate by reference all preceding paragraphs and

9   allegations as if fully set forth herein.

10      80.   Plaintiff KAREN ANN PAVONI is the natural daughter of Rose

11  Marie Coats, deceased, and is a qualifying heir to the Estate of Rose Marie Coats.

12      81.   Plaintiff PAMELA JOYCE MOYET is the natural daughter of Rose

13  Marie Coats, deceased, and is an heir to the Estate of Rose Marie Coats.

14      82.   Plaintiff FRED ARTHUR SCHEID is the natural son of Rose Marie

15  Coats, deceased, and is an heir to the Estate of Rose Marie Coats.

16      83.   Plaintiff, BOBBY LYNN COATS, is the natural son of Roy Joe Coats,

17  deceased, and is an heir to the Estate of Roy Joe Coats.

18      84.   As a result of Defendants' actions, inactions, and negligence as alleged

19  herein, Rose Marie Coats suffered and died from fatal injuries on or about February

20  27, 2011.

21      85.   The damages claimed for wrongful death and the relationships of

22  Plaintiffs to decedent Rose Marie Coats are as follows:

23          a.   KAREN ANN PAVONI, individually as a qualifying heir and

24  wrongful death claimant, pursuant to law, claims: loss of financial support; loss of

25  services; loss of decedent Rose Marie Coats's love, companionship, comfort, care,

26  assistance, protection, affection, society, and moral support; loss of decedent Rose

27  Marie Coats' training and guidance; medical, funeral and burial expenses; and all

28  other damages permitted by law.

1        b.    PAMELA JOYCE MOYET, individually as a qualifying heir

2  and wrongful death claimant, pursuant to law, claims: loss of financial support; loss

3  of services; loss of decedent Rose Marie Coats's love, companionship, comfort,

4  care, assistance, protection, affection, society, and moral support; loss of decedent

5  Rose Marie Coats' training and guidance; medical, funeral and burial expenses; and

6  all other damages permitted by law.

7        c.    FRED ARTHUR SCHEID, individually as a qualifying heir and

8  wrongful death claimant, pursuant to law, claims: loss of financial support; loss of

9  services; loss of decedent Rose Marie Coats's love, companionship, comfort, care,

10  assistance, protection, affection, society, and moral support; loss of decedent Rose

11  Marie Coats' training and guidance; medical, funeral and burial expenses; and all

12  other damages permitted by law.

13      86.   As a result of Defendants' actions, inactions, and negligence as alleged

14  herein, Roy Joe Coats suffered and died from fatal injuries on or about February 27,

15  2011.

16      87.   The damages claimed for wrongful death and the relationships of

17  Plaintiffs to decedent Roy Joe Coats are as follows:

18        a.    BOBBY LYNN COATS, individually as a qualifying heir and

19  wrongful death claimant, pursuant to law, claims: loss of financial support; loss of

20  services; loss of decedent Roy Joe Coats's love, companionship, comfort, care,

21  assistance, protection, affection, society, and moral support; loss of decedent Roy

22  Joe Coats' training and guidance; medical, funeral and burial expenses; and all

23  other damages permitted by law.

24                  **RELIEF REQUESTED**

25      WHEREFORE, Plaintiffs pray judgment against defendants, and each of

26  them, as hereinafter follows:

27  **On PLAINTIFFS' FIRST CAUSE OF ACTION:**

28      1.   For medical and incidental expenses according to proof;

2.   For other special damages according to proof;

3.   For general and emotional distress damages;

4.   For prejudgment interest on the award for damages rendered in favor of Plaintiffs, calculated from the time the cause of action arose, or as provided in the California Civil Code; and

**On PLAINTIFFS' SECOND CAUSE OF ACTION:**

1.   For medical and incidental expenses according to proof;

2.   For other special damages according to proof;

3.   For general and emotional distress damages;

4.   For prejudgment interest on the award for damages rendered in favor of Plaintiff, calculated from the time the cause of action arose, or as provided in the California Civil Code; and

**On PLAINTIFFS' THIRD CAUSE OF ACTION:**

1.   For medical and incidental expenses according to proof;

2.   For other special damages according to proof;

3.   For general and emotional distress damages;

4.   For prejudgment interest on the award for damages rendered in favor of Plaintiff, calculated from the time the cause of action arose, or as provided in the California Civil Code; and

**On PLAINTIFFS' FOURTH CAUSE OF ACTION:**

1.   For medical and incidental expenses according to proof;

2.   For other special damages according to proof;

3.   For general and emotional distress damages;

4.   For prejudgment interest on the award for damages rendered in favor of Plaintiff, calculated from the time the cause of action arose, or as provided in the California Civil Code; and

**On PLAINTIFFS' FIFTH CAUSE OF ACTION:**

1.   For medical and incidental expenses according to proof;

2.    For other special damages according to proof;

3.    For general and emotional distress damages;

4.    For prejudgment interest on the award for damages rendered in favor of Plaintiff, calculated from the time the cause of action arose, or as provided in the California Civil Code; and

**On PLAINTIFFS' SIXTH CAUSE OF ACTION:**

1.    For medical and incidental expenses according to proof;

2.    For other special damages according to proof;

3.    For general and emotional distress damages;

4.    For prejudgment interest on the award for damages rendered in favor of Plaintiff, calculated from the time the cause of action arose, or as provided in the California Civil Code; and

5.    For the purchase price of the SUBJECT VEHICLE including any and all interest accrued on principle balance.

**On PLAINTIFFS' SEVENTH CAUSE OF ACTION:**

1.    For medical and incidental expenses according to proof;

2.    For other special damages according to proof;

3.    For general and emotional distress damages;

4.    For prejudgment interest on the award for damages rendered in favor of Plaintiff, calculated from the time the cause of action arose, or as provided in the California Civil Code; and

**ON ALL CAUSES OF ACTION:**

1.    For costs of suit; and

2.    For such other and further relief as the court deems proper.

Dated: December 19, 2011

By: _____
Scott P. Nealey

Robert J. Nelson (State Bar No. 132797)
Scott P. Nealey (State Bar No. 193062)
Cecilia Han (State Bar No. 235640)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

Dated: December 19, 2011

By: _____
    Scott P. Nealey

Robert J. Nelson (State Bar No. 132797)
Scott P. Nealey (State Bar No. 193062)
Cecilia Han (State Bar No. 235640)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
KAREN ANN PAVONI, individually; PAMELA JOYCE MOYET, individually; FRED ARTHUR SCHEID, individually; BOBBY LYNN COATS, individually.

**DEFENDANTS**
CHRYSLER GROUP LLC

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Scott P. Nealey, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor San Francisco, CA 94111, (415) 956-1000

Attorneys (If Known)

Philip R. Cosgrove, Esq.
Brown Eassa & McLeod, LLP
444 S. Flower Street, Suite 1100
Los Angeles, CA 90071-3124

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Diversity jurisdiction, 28 U.S.C. 1332.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☒ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

## CV11 10513

**FOR OFFICE USE ONLY:** Case Number:_____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)      CIVIL COVER SHEET      Page 1 of 2

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | San Diego County |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date December 19, 2011

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |



# UNITED STATES DISTRICT COURT
### for the
Central District of California

KAREN ANN PAVONI, individually; PAMELA JOYCE MOYET,
individually; FRED ARTHUR SCHEID, individually;
BOBBY LYNN COATS, individually,

*Plaintiff*

v.

CHRYSLER GROUP LLC and DOES 1 through 100,
inclusive,

*Defendant*

)
)
)
)
)
)
)
)

Civil Action No. **CV11 10513 - RSWL**
**(SPx)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Scott P. Nealey, Esq.
> Lieff, Cabraser, Heimann & Bernstein, LLP
> 275 Battery Street, 29th Floor
> San Francisco, CA 94111
> (415) 956-1000

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

SEAL
MARILYN DAVIS

Date: _DEC 2 0 2011_

_Signature of Clerk or Deputy Clerk_

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| KAREN ANN PAVONI, individually; PAMELA JOYCE MOYET, individually; FRED ARTHUR SCHEID, individually; BOBBY LYNN COATS, individually, | ) |
| *Plaintiff* | ) |
| v. | ) |
| CHRYSLER GROUP LLC and DOES 1 through 100, inclusive, | ) |
| *Defendant* | ) |

Civil Action No. CV11 10513 -RSWL (SHx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

    Scott P. Nealey, Esq.
    Lieff, Cabraser, Heimann & Bernstein, LLP
    275 Battery Street, 29th Floor
    San Francisco, CA 94111
    (415) 956-1000

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: DEC 2 0 2011

_____
*Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: